IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:19-cv-526

| | |
|---|---|
| CLINTON ATKINSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VEOLIA NORTH AMERICA, LLC, ) <br> ) <br> Defendant. ) <br> ) <br> ) | **COMPLAINT** <br> **Jury Trial Demanded** |

PRELIMINARY STATEMENT

Clinton Atkinson is a business development professional whose career with Veolia North America, LLC (hereinafter "Veolia" or "Defendant") was ended due to retaliation faced after he complained about harassment on the basis of sex. Each of Plaintiff's complaints about harassment perpetrated by his direct supervisor, Robert Wheatley, were reliably and swiftly met with retaliation from Wheatley and Wheatley's supervisor, Robert Cappadona. Ultimately, Plaintiff was terminated after again complaining about harassment, and asking to report to a different supervisor in order to avoid further harassment and retaliation. Plaintiff asserts claims against Defendant under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq*. (hereinafter "Title VII"), the North Carolina Wage & Hour Act, N.C. Gen. Stat. § 95-25.1, *et seq*. (hereinafter "NCWHA"), the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (hereinafter "FMLA"), and under the common law of the State of North Carolina.

1

## THE PARTIES

1. At all times relevant to this Complaint, Plaintiff Clinton Atkinson, a 39-year-old male, has been a citizen and resident of Clayton, North Carolina, in Johnston County. Plaintiff was an "employee" of Defendant within the meaning of the common law, within the meaning of 42 U.S.C. § 2000e(f), and was an "eligible employee within the meaning of 29 U.S.C. § 2611(2).

2. At all times relevant to this Complaint, Defendant is and has been a limited liability corporation. Its principal place of business was located in Milwaukee, Wisconsin up until 2016 when headquarters were relocated to Boston, Massachusetts. At all times relevant to this Complaint, Defendant did business in the state of North Carolina and was the employer of Plaintiff within the meaning of, 42 U.S.C. 2000e(b), 29 U.S.C. § 2611(4), and within the meaning of the common law, and regularly employed more than 500 employees.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as certain of Plaintiff's causes of action arise under the laws of the United States. This Court has supplemental jurisdiction over the subject matter of Plaintiff's claims arising under the laws of the State of North Carolina pursuant to 28 U.S.C. § 1367 as such claims form the same case or controversy as those claims arising under the laws of the United States.

4. Venue is proper in the United States District Court for the Eastern District of North Carolina under 28 U.S.C. § 1391(b)(1) and (b)(2), inasmuch as the events or omissions giving rise to the following claims occurred within this judicial district.

## FACTS

5. Plaintiff's employment with Defendant began in or around June 2014.

6. Throughout his employment, up until the time he engaged in protected activity, Plaintiff received positive feedback and multiple awards in recognition of his work.

7. In 2015, and again in 2017, Plaintiff was designated as the Mid Atlantic Branch Account Manager of the Year. In 2017, Plaintiff also received the Manager of the Year and Outstanding Achievement Accelerating Growth awards and was appointed to the Veolia President's Club for that year.

8. Plaintiff served as President of the Research Triangle Park Chapter of the Alliance of Hazardous Materials Professionals in 2017.

9. In or around January 2018, Plaintiff was promoted to Key Account Manager and began reporting directly to Robert Wheatley, Vice President of Sales. At the time of his termination in December 2018, Plaintiff was the highest performing member of his sales team.

10. In or around April 2018, on a company trip, Mr. Wheatley rubbed Plaintiff's shoulders, an unwelcome and uninvited physical intrusion.

11. Mr. Wheatley called Plaintiff late at night and on weekends to invite him to dinner, and made comments like "how's my best-looking sales rep doing?"

12. Plaintiff became increasingly uncomfortable around Mr. Wheatley, straining their working relationship. This strain spilled over into Plaintiff's working relationship with Robert Cappadona, Executive Vice President and Chief Operating Officer, as well.

13. On September 20, 2018, Plaintiff received an email from Mr. Cappadona bizarrely accusing him of "blackmailing" a co-worker. This accusation was unprompted and had no factual basis.

14. On September 20, 2018, Plaintiff called Veolia's human resources hotline to report the

blackmail accusation.

15. Following Plaintiff's complaint to human resources, Mr. Wheatley told Plaintiff "there will be two of us on the unemployment line." In response to Plaintiff asking if his job was in jeopardy, Mr. Wheatley told Plaintiff "I don't know."

16. On or around September 24, 2018, Plaintiff took a week of leave to attend his grandmother's funeral and care for his mother who was ill.

17. On or around October 10, 2018, during a conference call with both colleagues and clients, Mr. Wheatley said to Plaintiff "I'm not going to take it up the ass like you do, Clinton."

18. Plaintiff reported this comment to human resources later that day.

19. On or around the following day, Mr. Wheatley confronted Plaintiff, telling him that he knew Plaintiff had reported him to human resources.

20. Following this interaction, Mr. Wheatley and Mr. Cappadona, began re-directing work from Plaintiff. Plaintiff was excluded from meetings with Honeywell, a large account that he had been actively managing.

21. Mr. Wheatley and Mr. Cappadona also began homing in on trivial complaints, like whether envelope purchases were required in certain transactions.

22. Mr. Wheatley also instructed another employee, Peggy Que, to reduce the value of a deal Plaintiff had closed with Cardinal Health from $12 million to $6 million, artificially suppressing Plaintiff's sales numbers.

23. On October 19, 2018, Defendant's in-house counsel concluded an investigation into Plaintiff's claims, declared them unmeritorious, and recommended no further action.

24. Plaintiff supplied names of several coworkers who would be able to corroborate events

4

referenced in his complaints, but none were interviewed in the course of the investigation. Only Plaintiff and the two supervisors he accused of harassment and retaliation were interviewed.

25. On October 19, 2018, Plaintiff's unborn daughter passed away. Plaintiff took approximately a week off to be with his family, and returned to work in late October, 2018.

26. Immediately upon returning to work, Plaintiff again began suffering from retaliatory treatment, including an accusation that Plaintiff was prematurely distributing information to his team regarding a pending award of business. Plaintiff reported this conduct, as well as its suspicious proximity to his return from leave, to human resources.

27. On or around November 20, 2018, during a phone call Mr. Wheatley said that Plaintiff must have been kissing a male co-worker since they had both been sick around the same time.

28. On or around November 30, 2018, Plaintiff reported this comment to human resources.

29. On December 12, 2018, Plaintiff was called into a meeting with Mr. Cappadona and the Executive Vice President of Human Resources to discuss alleged deficiencies in Plaintiff's work performance.

30. On December 13, 2018, Plaintiff contacted Bill DiCroce, CEO explaining that he had been harassed and retaliated against and requested he be allowed to report to a different supervisor.

31. On December 14, 2018, Mr. Cappadona gave Plaintiff a memorandum with accusations of performance deficiencies in Plaintiff's work. Later that day, Plaintiff sent an email responding to the memorandum and addressing the accusations, and writing that he believed these accusations were drafted in retaliation for his objections to and complaints about sexual harassment and the hostile work environment the harassment engendered.

5

32. On December 18, 2018, Plaintiff received a termination letter from Mr. Cappadona. The letter stated that Plaintiff's termination was due to "numerous false and otherwise inappropriate statements" contained in Plaintiff's December 13, 2018 email to Mr. DiCroce, and because of his request to report to a different supervisor.

33. Plaintiff has not been paid outstanding bonuses for 2018 totaling approximately $20,000 following his termination.

34. Plaintiff was also due a bonus for the contract he secured for Defendant with Honeywell in 2018 worth approximately $100 million, which, according to his existing compensation agreement would have resulted in additional bonus payments of approximately $50,000 to Plaintiff over the next five years.

35. Plaintiff has suffered severe emotional and financial distress due to Defendant's illegal actions.

36. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations Title VII of the Civil Rights Act of 1964 on the basis of sex. On or about August 23, 2019, Plaintiff was issued a Notice of Right to Sue. All conditions precedent to this lawsuit have been fulfilled.

## **FIRST CAUSE OF ACTION: TITLE VII RETALIATION**

37. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

38. Defendant's retaliation against Plaintiff's complaints of sex discrimination and harassment, by and through his termination, is in violation of Plaintiff's rights as afforded to him by the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3.

39. Plaintiff held an objectively reasonable belief that Defendant's employment practices, described above, were unlawful and illegally discriminatory in violation of 42 U.S.C. § 2000e-2.
40. By and through his complaints and objections to Defendant's discriminatory practices, Plaintiff engaged in protected activity. Defendant had knowledge of Plaintiff's protected activity.
41. After Plaintiff complained about Defendant's practices, Defendant retaliated against Plaintiff by misusing the disciplinary process and ultimately terminating Plaintiff's employment.
42. At the time of Plaintiff's termination, he was performing his job duties at a level that met Defendant's legitimate expectations.
43. By the conduct described above, Defendant violated Plaintiff's rights protected under the Civil Rights Act of 1964. Plaintiff has suffered injury as a result of Defendant's actions in an amount to be determined at trial.

## SECOND CAUSE OF ACTION: TITLE VII SEX DISCRIMINATION

44. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.
45. Plaintiff was qualified for his position and performed his job duties at a level that met Defendant's legitimate expectations.
46. Plaintiff worked for Defendant for more than five (5) years, received multiple positive performance reviews, and received no formal complaints until he complained about sexual harassment and discrimination at the workplace.

47. Plaintiff's termination following the aforementioned pattern of discriminatory behavior against Plaintiff's sex creates a clear inference of discrimination.

48. Defendant intended to, and did, illegally discriminate against the Plaintiff on the basis of his sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.

49. Plaintiff is entitled to all of his benefits of employment, including, but not limited to back pay, front pay, health insurance, life insurance, retirement benefits, and other benefits.

50. Plaintiff is entitled to recover compensatory damages as provided by the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

51. Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

52. Plaintiff is entitled to recover reasonable attorney's fees, the costs and expenses of this action, and such interest as may be allowed by law.

## **THIRD CAUSE OF ACTION: TITLE VII HOSTILE WORK ENVIRONMENT**

53. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

54. Plaintiff objected to discriminatory conduct of Mr. Wheatley including his rubbing Plaintiff's shoulder and neck on a business trip, saying to him "I don't take it up the ass like you do," and repeatedly calling on nights and weekends to invite Plaintiff to dinner.

55. The foregoing unwelcome conduct was based upon Plaintiff's sex.

56. The foregoing unwelcome conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment.

57. The foregoing unwelcome conduct was attributable to Defendant, as Defendant knew or should have known of such conduct and Plaintiff's complaints in regard to the same.

8

Case 5:19-cv-00526-BO   Document 1   Filed 11/20/19   Page 8 of 12

58. The foregoing conduct constitutes discrimination against Plaintiff's sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, as amended.

59. As a result of these actions, Plaintiff has been damaged in an amount to be determined at trial, plus punitive damages, in an amount to be determined by the finder of fact, as well as attorneys' fees.

## FOURTH CAUSE OF ACTION: WRONGFUL DISCHARGE IN VIOLATION OF NORTH CAROLINA PUBLIC POLICY

60. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

61. Plaintiff was an employee of Defendant.

62. It is the public policy of the State of North Carolina, as stated in N.C. Gen. Stat. §143-422.2, that employees shall be free from sex discrimination in their employment.

63. Defendant terminated Plaintiff's employment because of his sex.

64. Plaintiff was sexually harassed, discriminatorily treated, and discriminatorily discharged because of his gender.

65. Plaintiff's wrongful discharge was in violation of North Carolina public policy.

66. As a result of these actions, Plaintiff has been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION: FMLA RETALIATION

67. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

68. Defendant retaliated against Plaintiff for exercising his FMLA rights, in violation of 29 U.S.C. § 2615(a).

69. Plaintiff engaged in protected activity as he exercised his rights to take leave to care for his wife after she suffered a still-birth on October 19, 2018.

70. Defendant took a materially adverse employment action against Plaintiff by engaging in retaliatory actions immediately following Plaintiff's return to work and by terminating his employment approximately two months after he exercised his FMLA rights.

71. Plaintiff's exercising of his FMLA rights caused Defendant to terminate Plaintiff's employment and engage in other retaliatory acts.

72. Accordingly, Defendant violated Plaintiff's rights under the FMLA, 29 U.S.C. § 2601, *et seq.,* specifically § 2615(a).

73. Plaintiff is entitled to recover from Defendant liquidated damages in the amount of any wages, salary, employment benefits, or other compensation denied or lost to him by reason of the Defendant's violations of the FMLA.

## SIXTH CAUSE OF ACTION: VIOLATION OF THE NORTH CAROLINA WAGE & HOUR ACT

74. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

75. Pursuant to North Carolina law, Defendant is required to pay their employees all wages accruing to the employee of the regular payday under N.C. Gen. Stat. § 95-25.6.

76. "Wages" include "sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C. Gen. Stat. § 95-25.2(16).

77. Defendants promised to compensate Mr. Atkinson for his services with a bonus based upon sales performance.

10

78. Upon his termination from employment with Defendant, Plaintiff was deprived of his earned bonus.

79. As a result of this violation, Plaintiff has suffered and continues to suffer damages in an amount to be determined at trial, and is entitled to recover such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to N.C. Gen. Stat. § 95-25.22.

## SEVENTH CAUSE OF ACTION: BREACH OF CONTRACT

80. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

81. During his employment, Plaintiff was entitled to performance bonuses.

82. Mr. Atkinson was terminated without good cause and did not receive a bonus for 2018.

83. A bonus offered by an employer as an inducement to an employee to render service becomes a supplementary contract which cannot be deprived without cause.

84. Accordingly, Plaintiff is entitled to damages caused by Defendant's breach of its supplementary contract with Plaintiff by terminating plaintiff's employment and failing to pay the bonus due.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS:

1. That Plaintiff recover of Defendant in excess of $25,000 as compensatory damages;

2. That Plaintiff recover punitive damages of the Defendant in excess of $25,000;

3. That Plaintiff recover of Defendant liquidated damages pursuant to 29 U.S.C. § 2617;

4. That Plaintiff recover of Defendant an amount of liquidated damages equal to the amount of all unpaid compensation, together with the costs and fees incurred in connection with this action, including all reasonable attorneys' fees, pursuant to the provisions of N.C. Gen. Stat. § 95-25.22;

5. That Plaintiff be granted trial by jury;

6. That Plaintiff recover of the Defendant reasonable costs and expenses, including attorney fees, in bringing this action;

7. For such other and further relief as to the Court deems just and proper.

This the 20th day of November 2019.

Kornbluth Ginsberg Law Group, P.A.

/s/ Michael A. Kornbluth
Michael A. Kornbluth
N.C. Bar No. 27928
Email: mkornbluth@KGLawNC.com
Joseph E. Hjelt
N.C. Bar No. 53497
Email: jhjelt@KGLawNC.com
3100 Tower Boulevard, Suite 800
Durham, North Carolina 27707
Telephone: (919) 401-4100
Facsimile: (919) 401-4104