IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-526-BO

| | | |
|---|---|---|
| CLINTON ATKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| VEOLIA NORTH AMERICA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This cause is before the Court on defendant's motion [DE 13] for partial dismissal. For the reasons discussed below, the motion [DE 13] is DENIED.

## BACKGROUND

Plaintiff brings this employment discrimination action after being terminated from Veolia North America following his complaints to the company alleging sexual harassment and discrimination by his supervisor.

Plaintiff's employment with the Veolia began in 2014. Comp. ¶ 5, DE 1. During his time there, he received positive feedback and won multiple awards for his work. *Id.* ¶ 6. In 2015 and 2017 he was named the Mid Atlantic Account Manager of the Year. *Id.* In 2017 he was named Manager of the Year and was appointed to the Veolia President's club. *Id.* ¶ 7. In January 2018, plaintiff was promoted to Key Account Manager and began reporting directly to Robert Wheatley, Vice President of Sales. *Id.* ¶ 9.

In or around April 2018, on a company trip, Wheatley rubbed plaintiff's shoulders, an unwelcome and uninvited physical intrusion. *Id.* ¶ 10. Wheatley then started calling plaintiff late at night and on weekends to invite him to dinner, and made comments like "how's my best-looking sales rep doing?" *Id.* ¶ 11. Plaintiff became increasingly uncomfortable around Mr.

Wheatley, straining their working relationship, which spilled over into plaintiff's working relationship with Robert Cappadona, Executive Vice President and Chief Operating Officer. *Id.* ¶ 12. On September 20, 2018, plaintiff received an email from Mr. Cappadona accusing him of "blackmailing" a co-worker; this accusation was unprompted and had no factual basis. *Id.* ¶ 13. That same day, plaintiff called Veolia's human resources hotline to report the blackmail accusation. *Id.* ¶ 14.

On or around October 10, 2018, during a conference call with both colleagues and clients, Wheatley said to plaintiff: "I'm not going to take it up the ass like you do, Clinton." *Id.* ¶ 17. Plaintiff reported this comment to human resources. *Id.* ¶ 18. The following day, Wheatley confronted plaintiff, telling him that he knew plaintiff had reported him to HR. *Id.* ¶ 19. Following this interaction, Wheatley and Cappadona began re-directing work away from plaintiff. ¶ 20. Plaintiff was excluded from meetings with Honeywell, a large account that he had been actively managing. *Id.* Wheatley also instructed another employee to reduce the value of a deal plaintiff had closed with Cardinal Health from $12 million to $6 million, artificially suppressing plaintiff's sales numbers. *Id.* ¶ 22. On October 19, defendant's in-house counsel conducted an investigation into plaintiff's claims and declared them without merit, despite failing to interview coworkers who plaintiff had indicated could corroborate the events. *Id.* ¶¶ 23–24. Plaintiff was then subjected to further retaliatory conduct, including an accusation that he was prematurely distributing information to his team regarding a pending award of business. *Id.* ¶ 26. Plaintiff reported this to HR. *Id.* On or around November 20, 2018, during a phone call, Wheatley said that plaintiff must have been kissing a male co-worker since they had both been sick around the same time. *Id.* ¶ 27. Again, plaintiff reported this comment to human resources. *Id.* ¶ 28.

On December 12, 2018, plaintiff was called into a meeting with Cappadona and the Executive Vice President of Human Resources to discuss alleged deficiencies in plaintiff's work performance. *Id.* ¶ 29. The next day, plaintiff contacted the company's CEO, explaining that he had been harassed and retaliated against and requested reassignment to a different supervisor. *Id.* ¶ 30. On December 14, Cappadona handed plaintiff a memorandum with accusations of performance deficiencies in plaintiff's work. *Id.* ¶ 31. On December 18, plaintiff received a termination letter from Mr. Cappadona. *Id.* ¶ 32. The letter stated that plaintiff's termination was due to "numerous false and otherwise inappropriate statements" contained in plaintiff's email to the CEO, and because of his request for a different supervisor. *Id.*

At the time of his termination, plaintiff was the highest performing member of his sales team. *Id.* ¶ 9. Plaintiff has not received outstanding bonuses for 2018 totaling approximately $20,000. *Id.* ¶ 33. Plaintiff was also due a bonus for the contract he secured with Honeywell in 2018 worth approximately $100 million, which, according to his existing compensation agreement would have resulted in additional bonus payments of approximately $50,000 to plaintiff over the next five years. *Id.* ¶ 34.

Plaintiff filed this action in November 2019, asserting claims for sex and gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), wrongful discharge in violation of North Carolina public policy, N.C. Gen Stat. § 143-422.2, retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6, and breach of contract.

Defendant moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's Title VII claims as well as plaintiff's claim for wrongful discharge in violation of North Carolina Public Policy.

DISCUSSION

"A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a Rule 12(b)(6) challenge, plaintiff's complaint must articulate facts, that when taken as true, show plaintiff has stated a claim for relief that is facially plausible. *Id.* at 193 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Facial plausibility means that the facts pleaded "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678.

"Title VII of the Civil Rights Act of 1964 provides that it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (internal quotations omitted). "Conditions" of employment not only include the "narrow contractual sense" but encompass actual working conditions. *Id.* Accordingly, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.*

4

Similarly, North Carolina prohibits employers from discharging employers on account of sex or in retaliation for reporting discrimination. N.C. Gen. Stat. § 143-422.2; *Bigelow v. Town of Chapel Hill*, 227 N.C. App. 1, 13 (2013).

Here, plaintiff has stated plausible claims for hostile work environment, retaliation, and sex discrimination under Title VII, as well as wrongful discharge under North Carolina law.

Defendant's primary argument for dismissal is that plaintiff failed to allege that he was harassed and discriminated against *because* of his sex or gender. This argument is unavailing. The complaint states a plausible claim that Wheatley harassed and discriminated against plaintiff because plaintiff did not conform to sex and gender-based stereotypes held by Wheatley. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51 (1989). Defendant's characterization of the allegations as "sporadic male-on-male flirtation or horseplay, or a mere rude or offensive utterance" fails to view the allegations in the light most favorable to plaintiff. Wheatley's sexually derogatory comments to plaintiff—his direct subordinate—followed by the redirection of work and deflation of his sales numbers, ultimately culminating in his termination, certainly make a plausible showing that Wheatley targeted plaintiff because of his sex or gender, and that plaintiff was then retaliated against for reporting the harassment.

Defendant's other arguments—that the harassment was not sufficiently severe and that plaintiff did not engage in protected conduct by reporting the harassment—are meritless.

Plaintiff has plausibly stated his claims for relief.

## CONCLUSION

For the reasons discussed above, defendant's motion [DE 13] is DENIED.

So ORDERED, this __14__ day of April, 2020.

_____
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE