UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-526-BO

| CLINTON ATKINSON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | ORDER |
| VEOLIA NORTH AMERICA, LLC, | ) |  |
| Defendant. | ) |  |

This matter is before the Court on defendant's motion for ruling on waiver of the attorney-client privilege and to continue deadlines [DE 28] and motion for leave to file a reply memorandum in support of its motion for a ruling on waiver of the attorney-client privilege and to continue deadlines [DE 33]. Plaintiff has responded in opposition and the matters are ripe for disposition.

BACKGROUND

Plaintiff's employment with the Veolia began in 2014. Compl. ¶ 5. During his time there, he received positive feedback and won multiple awards for his work. *Id.* at ¶ 6. In 2015 and 2017, he was named the Mid Atlantic Branch Account Manager of the Year. *Id.* In 2017, he was named Manager of the Year and was appointed to the Veolia President's club. *Id.* at ¶ 7. In January 2018, plaintiff was promoted to Key Account Manager and began reporting directly to Robert Wheatley, Vice President of Sales. *Id.* at ¶ 9.

In April 2018, on a company trip, Mr. Wheatley rubbed plaintiff's shoulders, an unwelcome and uninvited gesture. *Id.* at ¶ 10. Mr. Wheatley then started calling plaintiff late at night and on weekends to invite him to dinner, and made comments like "how's my best-looking sales rep doing?" *Id.* at ¶ 11. Plaintiff became increasingly uncomfortable around Mr. Wheatley, straining their working relationship, which spilled over into plaintiff's working relationship with

Robert Cappadona, Executive Vice President and Chief Operating Officer. *Id.* at ¶ 12. On September 20, 2018, plaintiff received an email from Mr. Cappadona accusing him of "blackmailing" a co-workers. *Id.* at ¶ 13. That same day, plaintiff called Veolia's human resources hotline to report the blackmail accusation. *Id.* at ¶ 14.

On October 10, 2018, during a conference call with both colleagues and clients, Mr. Wheatley said to plaintiff: "I'm not going to take it up the ass like you do, Clinton." *Id.* at ¶ 17. Plaintiff reported this comment to human resources on the same day. *Id.* at ¶ 18. The following day, Wheatley confronted plaintiff, telling him that he knew plaintiff had reported him to HR. *Id.* at ¶ 19. Following this interaction, Mr. Wheatley and Mr. Cappadona began re-directing work away from plaintiff. *Id.* at ¶ 20. Plaintiff was excluded from meetings with Honeywell, a large account that he had been actively managing. *Id.* Mr. Wheatley also instructed another employee to reduce the value of a deal plaintiff had closed with Cardinal Health from $12 million to $6 million, which artificially suppressed plaintiff's sales numbers. *Id.* at ¶ 22. On October 19, defendant's in-house counsel concluded an investigation into plaintiff's claims and declared them without merit, despite failing to interview coworkers who plaintiff had indicated could corroborate the events. *Id.* at ¶¶ 23–24. Plaintiff was then subjected to further retaliatory conduct, including an accusation that he was prematurely distributing information to his team regarding a pending award of business. *Id.* at ¶ 26. Plaintiff reported this to HR. *Id.* On or around November 20, 2018, during a phone call, Mr. Wheatley said that plaintiff must have been kissing a male coworker, since they had both been sick around the same time. *Id.* at ¶ 27. Again, plaintiff reported this comment to human resources. *Id.* at ¶ 28.

On December 12, 2018, plaintiff was called into a meeting with Mr. Cappadona and the executive vice president of human resources to discuss alleged deficiencies in plaintiff's work

performance. *Id.* at ¶ 29. The next day, plaintiff contacted the company's CEO, explaining that he had been harassed and retaliated against and requested reassignment to a different supervisor. *Id.* at ¶ 30. On December 14, Mr. Cappadona handed plaintiff a memorandum with accusations of performance deficiencies in plaintiff's work. *Id.* at ¶ 31. On December 18, plaintiff received a termination letter from Mr. Cappadona. *Id.* at ¶ 32. The letter stated that plaintiff's termination was due to "numerous false and otherwise inappropriate statements" contained in plaintiff's email to the CEO, and because of his request for a different supervisor. *Id.*

At the time of his termination, plaintiff was the highest performing member of his sales team. *Id.* at ¶ 9. Plaintiff has not received approximately $20,000 in outstanding bonuses for 2018. *Id.* at ¶ 33. Plaintiff was also due a bonus for the contract he secured with Honeywell in 2018 worth approximately $100 million, which, according to his existing compensation agreement, would have resulted in additional bonus payments of approximately $50,000 to plaintiff over the next five years. *Id.* at ¶ 34.

Plaintiff filed this action in November 2019, asserting claims for sex and gender discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), wrongful discharge in violation of North Carolina public policy, N.C. Gen Stat. § 143-422.2, retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6, and breach of contract.

After the parties exchanged written discovery, defendant took plaintiff's deposition on October 15, 2020. DE 32, p. 2 Defendant's counsel asked plaintiff if Wheatley had ever given plaintiff any indication that Wheatley was bisexual or an unhappily married homosexual. Pl. Dep. 175:7–9. Plaintiff said, "I just felt uncomfortable. You know, [Mr. Wheatley] put his hands on me.

3

He rubbed my groin." *Id.* at 175:12–14. Defense counsel replied, "He rubbed your groin?" *Id.* at 175:15. Plaintiff responded, "He grazed my groin, yes, when he reached across to grab a phone, yes." *Id.* at 175:16–17. This allegation was not made in plaintiff's complaint or his Equal Employment Opportunity Commission (EEOC) charge, both of which he testified that he has reviewed for accuracy. DE 29, p. 2; Pl. Dep. 188:13–17. Plaintiff did not mention this allegation during discovery either, despite being asked to identify all documents, evidence, and facts supporting his allegations that he was sexually harassed. DE 29, pp. 2–3.

During the deposition, defense counsel began to question plaintiff about why the allegation that Mr. Wheatley had touched plaintiff's groin had not previously been included in the lawsuit, then stated that plaintiff was "not being truthful" because he was "accusing somebody of touching him improperly." Pl. Dep. 176:24, 177:4–5. She also stated that "it's improper to make accusations about senior level employees about being —" *Id.* at 177:13–15. The transcript indicates that plaintiff was bothered by these remarks even after defense counsel apologized, and plaintiff stated, "Well you're saying I was untrue and that really upset me." *Id.* at 179:4–5.

Plaintiff also stated in his deposition that he told his attorney about Wheatley allegedly touching plaintiff's groin. *Id.* at 178:24–25, 190:19–20. Plaintiff maintained that he had informed his attorney of the incident even after defense counsel told plaintiff that she did not need to know what plaintiff told his attorney and that she was not asking what plaintiff told his attorney. *Id.* at 179:2–3, 6–7. Plaintiff also made more general statements such as, "I told [my attorney] the information and it gets drafted. And then I review it and I sign it," and "I trusted that everything that was written to the extent that it's supposed to be. All I can do is tell my attorney and tell the HR reps and that's it." *Id.* at 191:2–4, 193:3–6. Defense counsel then stopped the deposition, despite an objection by plaintiff's counsel. *Id.* at 193:22–25.

4

Defendant alleges that plaintiff waived attorney-client privilege on the subject of the alleged incident due to the statements he and his attorney made during the deposition. Defendant also argues it is entitled to discovery on this allegation because it is relevant to plaintiff's claims, defendant's defenses, and plaintiff's credibility, and asks the Court to extend discovery deadlines because of this. Defendant believes discovery should include production of all written communications with his attorney pertaining to this allegation, as well as deposition testimony because of plaintiff's waiver of attorney-client privilege. Defendant also argues the errata sheet should be ignored because it makes substantive changes to plaintiff's statements in an attempt to explain away testimony, further calls into question plaintiff's truthfulness and motives, and raises concerns about ethical violations by plaintiff's counsel because of the rule requiring an attorney to take affirmative action if a client makes a false statement and the advocate-witness rule.

## DISCUSSION

*Motion for Leave to File Reply and to Continue Deadlines*

Plaintiffs have filed a motion for leave to file a reply to respond to plaintiff's claims of improper elicitation of deposition testimony and state why plaintiff's suggested remedies are insufficient. Reply briefs are not permitted under the local rules of this Court. Local Civil Rules 7.1(g)(2), 26.1(d)(3). This Court has made exceptions to this prohibition only in "exceptional" circumstances, as "routine non-application of the prohibition would seriously undermine judicial efficiency." *Beaulieu v. Eq Indus. Servs.*, No. 5:06-CV-400-BR, 2008 U.S. Dist. LEXIS 140646, at *6 (Apr. 8, 2009). The non-discovery briefing schedule, which is not the same as the expedited discovery briefing schedule, requires that replies to motions be filed within fourteen days after service of the response. Local Civil Rule 7.1(g)(1).

5

Defendant filed its motion for ruling on waiver of the attorney-client privilege on November 19, 2020, and plaintiff responded on December 3, 2020. Defendant filed its motion for leave to file a reply memorandum on December 12, 2020, more than fourteen days after plaintiff's response. Therefore, because defendant filed its motion and proposed reply memorandum more than fourteen days from the filing of the response, defendant's proposed reply is untimely. Furthermore, since reply briefs are not permitted under the rules of this Court, defendant's motion for leave to file a reply memorandum is highly disfavored. The Court does not find that this is a sufficiently "exceptional" circumstance. The arguments regarding defendant's counsel's conduct during plaintiff's deposition and the remedial measures suggested by plaintiff are not new facts, as they were already presented to defendant's counsel during the conferral process, which preceded the filing of the underlying motion. If defendant felt it was important to address these issues, it could have done so in its initial motion. Therefore, for the combination of the rely brief being untimely and disallowed in this Court, defendant's motion for leave to file a reply is denied.

*Motion for Ruling on Waiver of Attorney-Client Privilege and to Continue Deadlines*

As an initial matter, defendant's request to continue deadlines is now moot since the Court recently extended deadlines. However, defendant has also asked for a ruling on waiver of the attorney-client privilege with respect to his communications with counsel about the "groin" allegation. Defendant also argues it is entitled to discovery on this allegation because it is relevant to plaintiff's claim, defendant's defenses, and plaintiff's credibility. Defendant believes this discovery should include production of all written communications between plaintiff and his attorney pertaining to this allegation as well as deposition testimony.

Under North Carolina law, attorney-client privilege protects a communication between a client and his attorney if "(1) the relation of attorney and client existed at the time the

6

communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege." *State v. McIntosh*, 336 N.C. 517, 523–24 (1994) (citation omitted). "Although an attorney may assert the privilege when necessary to protect the interests of the client, the privilege belongs solely to the client." *In re Miller*, 357 N.C. 316, 338–39 (2003). The attorney-client privilege is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

In this case, the point of contention between the parties concerns the fifth part of the attorney-client privilege test, regarding whether plaintiff waived the privilege. Attorney-client privilege "*may* be waived by the client when he offers testimony concerning the substance of the communication." *State v. Tate*, 294 N.C. 189, 193 (1978) (citations omitted) (emphasis added). "[T]he Fourth Circuit has recognized that the holder of [the attorney-client privilege] may waive the privilege either expressly or impliedly by a voluntary disclosure to a third party." *United States v. Turner*, No. 5:07-HC-2167-D, 2012 U.S. Dist. LEXIS 871, at *3 (E.D.N.C. Jan. 3, 2012). *See also, In re Grand Jury Investigation*, 142 F.R.D. 276, 279 (M.D.N.C. 1992) ("Waivers must typically be intentional or knowing acts."); *Marketel Media, Inc. v. Mediopotamus, Inc.*, No. 5:13-CV-427-D, 2015 U.S. Dist. LEXIS 76523, at *10–11 (E.D.N.C. June 11, 2015) (holding that there was indication of intent to waive attorney-client privilege when the client's testimony was qualified by the statement that "he does not know how [privilege] works"). "[A] court analyzing whether deposition testimony is voluntary must consider the facts of the case before it, specifically

the questions and answers from the deposition, and then decide if the testimony concerning the relevant information was voluntary." *Baumgardner v. Louisiana Binding Serv.*, No. 1:11-cv-794, 2013 U.S. Dist. LEXIS 27494, at *21 (S.D. Ohio Feb. 28, 2013) (citation and internal quotations omitted).

Here, plaintiff did not voluntarily and knowingly waive attorney-client privilege. The record shows that plaintiff was upset and intimidated by defense counsel's accusations regarding his truthfulness, and he specifically states, "Well, you're saying I was untrue and that really upset me." Pl. Dep. 179:4–5. When he did make statements regarding what he had told his attorney, he simply stated that he had told his attorney about the groin incident, that he had told his attorney everything, or that everything he told his attorney should have been included in the litigation documents. Plaintiff did not go into any further details about any conversation they had, suggesting there was no waiver. *But see ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 256 (E.D. Va. 2012) (finding waiver of privilege when the client "allowed extensive, detailed questions on that subject"); *Addison Whitney, LLC v. Cashion*, No. 17 CVS 1956, 2020 NCBC LEXIS 72, at *11–12 (N.C. Super. Ct. June 10, 2020) (finding waiver when the clients testified voluntarily and in detail about the advice they received from counsel, without objection). There is no indication that plaintiff intended to waive privilege or that he knew he was waiving privilege, only that he was trying to convince opposing counsel that his deposition testimony was truthful. Furthermore, plaintiff's counsel timely lodged objections in response to lines of questioning in which potential violations of the attorney-client privilege occurred. *Id.* at 176:19–23, 179:1, 189:18, 192:12. This indicates diligent efforts to prevent waiver and suggests that there was no waiver. *Banks v Office of the Senate Sergeant-At-Arms & Doorkeeper*, 233 F.R.D. 1, 4 (D.D.C.)(2005)(holding that there was no waiver of privilege when defendant made explicit objections to plaintiff's ine of

8

questioning) (citing Fed. R. Civ. P. 30). *But see Hawkins v. Stables*, 148 F.3d 379, 384 (4th Cir. 1998) (finding waiver of privilege when the relevant question was objectionable on its face on the ground of attorney-client privilege but no one objected); *Baumgardner*, 2013 U.S. Dist. LEXIS 27494, at *23 (finding waiver where counsel raised no objections based on attorney-client privilege to any questions). Based on this analysis, plaintiff did not waive attorney-client privilege, and defendant is not entitled to relief.

## CONCLUSION

For the above reasons, defendant's motion for leave to file a reply memorandum in support of its motion for a ruling on waiver of the attorney-client privilege and to continue deadlines [DE 33] is DENIED and defendant's motion for ruling on waiver of attorney-client privilege and to continue deadlines [DE 28] is ALLOWED. This Court finds that there was no waiver of attorney-client privilege and that defendant is not entitled to relief. Plaintiff's request for attorney's fees incurred in responding to defendant's motion is GRANTED.

SO ORDERED, this __5__ day of February, 2021.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE