IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-cv-526-BO

| | | |
|---|---|---|
| CLINTON ATKINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| VEOLIA NORTH AMERICA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's motion for summary judgement [DE 52]. Plaintiff responded and defendant replied. In this posture, the motion is ripe for ruling. For the following reasons, defendant's motion for summary judgement is DENIED.

## BACKGROUND

Plaintiff brings this action alleging that he was fired by defendant Veolia North America ("Veolia") because he reported sexual harassment and took family medical leave. Plaintiff worked for Veolia from 2014 until his termination in December of 2018. During this time, plaintiff received positive feedback and won multiple awards for his work. In January 2018, plaintiff was promoted to the role of key account manager and began reporting directly to Robert Wheatley, Veolia's Vice President of Sales.

In April 2018, Wheatley rubbed plaintiff's shoulders, allegedly an unwelcome and uninvited physical intrusion. Wheatley began calling plaintiff late at night and on weekends, invited plaintiff and his wife to dinner, and made comments about plaintiff's appearance such as "how's my best looking sales rep doing?" Plaintiff reports becoming increasingly uncomfortable

around Wheatley and that their relationship became strained. On September 20, 2018, plaintiff received an email from Robert Cappadona, Veolia's Executive Vice President and Chief Operating Officer. The email accused plaintiff of "blackmailing" a co-worker, which plaintiff alleges was unprompted and had no factual basis. Plaintiff called the human resources hotline to report the blackmail accusation. Following plaintiff's complaint to human resources, Wheatley told plaintiff "there will be two of us on the unemployment line." When plaintiff asked Wheatley if that meant plaintiff's job was in danger, Wheatley responded "I don't know."

In September 2018, plaintiff took about a week of leave to attend his grandmother's funeral and care for his ill mother. In October 2018, Wheatley said to plaintiff during a conference call with clients and colleagues: "I'm not going to take it up the ass like you do, Clinton." Plaintiff reported this comment to human resources. The next day, Wheatley confronted plaintiff and said, "I know it was you." Following this interaction, Wheatley and Cappadona began re-directing work away from plaintiff. Plaintiff was excluded from a large account that he had previously managed. Wheatley allegedly had another employee reduce the value of a deal plaintiff had closed by $6 million, artificially suppressing plaintiff's sales numbers.

On October 19, 2018, Veolia's in-house counsel conducted an investigation into plaintiff's sexual harassment and retaliation claims. During the course of this investigation, counsel only spoke with plaintiff, Cappadona, and Wheatley. Counsel found the allegations to be without merit.

Plaintiff began speaking with human resources during the fall of 2018 about taking leave pursuant to the Family Medical Leave Act soon, as his wife was due to have a baby in October. On October 19, 2018, plaintiff's wife had a stillborn child and plaintiff took about a week of leave to care for her. Immediately upon returning to work, plaintiff was allegedly subjected to further retaliatory action, including an accusation that he was prematurely distributing information to his

2

team regarding a pending award of business. Plaintiff reported this to human resources and highlighted its proximity to return from family leave. During a phone call around November 20, 2018, Wheatley said that plaintiff must have been kissing a male co-worker since they had both been sick around the same time. Again, plaintiff reported this comment to human resources.

On December 12, 2018, Cappadona called plaintiff into a meeting with himself and Veolia's Executive Vice President of Human Resources to discuss alleged deficiencies in plaintiff's work performance. Plaintiff, feeling frustrated by the continued retaliation, emailed Veolia's CEO on December 12, 2018, saying that he had been harassed and retaliated against and requesting reassignment to a different supervisor. On December 14, 2018, Cappadona gave plaintiff a memorandum containing accusations of performance deficiencies in plaintiff's work. On December 18, 2018, plaintiff received a termination letter from Cappadona, stating that plaintiff was fired due to "numerous false and otherwise inappropriate statements" contained in plaintiff's email to the CEO, and because of plaintiff's request for a different supervisor.

At the time of his termination, plaintiff was the highest performing member of his sales team. Plaintiff has not received outstanding bonuses for 2018 totaling approximately $20,000. Plaintiff was also due a bonus for the contract he secured with a key account in 2018 worth approximately $100 million, which, according to his existing compensation agreement would have resulted in additional bonus payments of approximately $50,000 to plaintiff over the next five years. Plaintiff alleges that he has suffered sever emotional and financial distress due to defendant's actions.

Plaintiff filed this action in November 2019, asserting claims for (1) retaliation, (2) sex discrimination, and (3) hostile work environment, pursuant to VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiff also asserts claims for (4) wrongful discharge in

3

violation of North Carolina public policy, N.C. Gen Stat. § 143-422.2; (5) retaliation for taking family leave, pursuant to the Family and Medical Leave Act of 1993 29 U.S.C. § 2615(a) ("FMLA"); (6) violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.6; and (7) breach of contract. In April 2020, this Court denied defendant's motion for partial dismissal. Defendant filed the instant motion in June 2021.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(A). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted).

The defendant makes several arguments including that the alleged conduct was not severe enough to be considered harassment, that the conduct was not motivated by plaintiff's gender or sex stereo-type, and that plaintiff did not in fact take FMLA leave. However, defendant fails in its burden to demonstrate that there are no genuine issues of material fact.

4

Defendant has failed to show that there is not a dispute regarding defendant's motivation for terminating plaintiff. Defendant argues that all the reasons for firing plaintiff were stated in plaintiff's termination letter—that plaintiff wrote an inappropriate email to the CEO and that plaintiff asked for a different supervisor. Simultaneously, defendant argues that plaintiff deserved to be fired, and his firing was not retaliation, because of plaintiff's poor work performance. Even then, defendant admits that plaintiff was at times a very productive salesperson at the company. Plaintiff alleges significant facts to show that he was terminated and retaliated against for reporting harassment and potentially for taking leave related to family medical emergencies. The Court finds that there is a genuine dispute of fact as to why plaintiff was terminated and what motivated defendant to make that decision.

This set of disputed facts is material to six of plaintiff's seven claims. To prove a claim of Title VII retaliation (First Cause of Action), one must show that "the desire to retaliate was the but-for cause of the challenged employment action." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (citations omitted) (quotations omitted). To prove a claim of wrongful discharge under North Carolina law (Fourth Cause of Action), one must show that "the termination itself [was] motivated by an unlawful reason or purpose that is against public policy." *Garner v. Rentenbach Constructors Inc.*, 350 N.C. 567, 572 (1999). To prove FMLA retaliation (Fifth Cause of Action), one must show that "that he engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity." *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016). The adverse employment action in this case is plaintiff's firing. Defendant's motivation for this firing, and whether it was a lawful motivation or not, is material to the resolution of the first, fourth, and fifth causes of action.

5

If defendant did in fact fire plaintiff for an unlawful reason, this is material to plaintiff's North Carolina Wage and Hour Act claim (Sixth Cause of Action) and breach of contract claim (Seventh Cause of Action). Plaintiff was terminated without being given his bonus, most of which he had already accrued. North Carolina requires employers who terminate employees for unlawful reasons to pay them their bonus. *See Roberts v. Mills*, 114 S.E. 530, 535 (1922); *Chew v. Leonard*, 44 S.E.2d 869, 872 (1947). Bonuses may not be deprived without sufficient cause. In this case, it is disputed whether plaintiff's work performance constituted sufficient cause, or just a pretext, to deny plaintiff his bonus. The lawful or unlawful motivation behind plaintiff's termination is disputed and material to the first, fourth, fifth, sixth, and seventh causes of action.

Defendant also fails in its burden to show there is not a dispute of fact with regards to Wheatley's motivation for his allegedly harassing and discriminatory behavior. Defendant alleges the behavior was not sexually motivated, but more like male-on-male banter. Plaintiff sufficiently alleges that it was sexual and that it was at least in part motivated by an animus towards males who do not conform to a typical masculine stereotype. The Court finds a genuine dispute of fact as to Wheatley's motivation behind his behaviors.

This set of disputed facts is material to two of plaintiff's seven claims. To prove a claim of Title VII sex discrimination (Second Cause of Action), one may show that one was discriminated against because of one's failure to conform with gender stereotypes. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989). To prove a Title VII hostile work environment claim (Third Cause of Action), one must show that "the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). Wheatley's motivation for his behavior is disputed.

Whether Wheatley's behaviors were motivated by sex or sexual stereotypes is material to the resolution of the second and third cause of action.

Accordingly, there is a genuine dispute of fact as to Veolia's motivation for firing plaintiff and as to Wheatley's motivation in harassing and retaliating against plaintiff. Both of these facts are material to claims in this case. Therefore, defendant has not met its burden in showing that there are no genuine disputes of material fact.

## CONCLUSION

For the following reasons, defendant's motion for summary judgement [DE 52] is DENIED.

SO ORDERED, this **4** day of February, 2022.

*Terrence Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE